# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ALMA BOJORQUEZ, JAKE VALLANTE, MATTHEW ALLAN and BRIELLE BRATTON, individually, and on behalf of all others similarly situated, | : : : : : | Case No. 2:16-cv-00551-MHW-EPD |
| | : | MOTION FOR FINAL APPROVAL OF |
| Plaintiffs, | : : : | ATTORNEY'S FEES, LITIGATION COSTS, AND CLASS REPRESENTATIVE INCENTIVE |
| vs. | : : | COMPENSATION |
| ABERCROMBIE & FITCH CO.; ABERCROMBIE & FITCH STORES, INC.; and DOES 1 through 10, inclusive, | : : : | JUDGE MICHAEL H. WATSON  MAGISTRATE JUDGE ELIZABETH |
| Defendants. | : : | PRESTON DEAVERS |

And Related Case

| | | |
|---|---|---|
| ALEXANDER BROWN and ARIK SILVA, individually, and on behalf of all others similarly situated, | : : : | Case No. 2:17-cv-01093-MHW-EPD |
| | : | MOTION FOR FINAL APPROVAL OF |
| Plaintiffs, | : : | ATTORNEY'S FEES, LITIGATION COSTS, AND CLASS |
| vs. | : : | REPRESENTATIVE INCENTIVE COMPENSATION |
| ABERCROMBIE & FITCH CO.; ABERCROMBIE & FITCH STORES, INC.; and DOES 1 through 10, inclusive, | : : : | JUDGE MICHAEL H. WATSON |
| | : | MAGISTRATE JUDGE ELIZABETH |
| Defendants. | : : | PRESTON DEAVERS |

## MOTION FOR FINAL APPROVAL OF ATTORNEY'S FEES, LITIGATION COSTS, AND CLASS REPRESENTATIVE INCENTIVE COMPENSATION

Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Representative Plaintiffs Jake Vallante, Matthew Allan, and Brielle Bratton in the matter of *Bojorquez, et al. v. Abercrombie & Fitch Co., et al.*, case number 2:16-cv-00551-MHW-EPD ("*Bojorquez* action"), and Plaintiffs Alexander Brown and Arik Silva in the matter of *Brown, et al. v. Abercrombie & Fitch Co., et al.*, case number 2:17-cv-01093-MHW-EPD ("*Brown* action"), hereby move for final approval of the attorney's fees, litigation costs, and class representative incentive compensation sought in the parties' settlement of the claims asserted in these actions (a copy of the Settlement Agreement was attached as Exhibit 1 to the Declaration of Randall  Aiman-Smith in Support of Motion for Preliminary Approval ("Aiman-Smith Decl."), found at Dkt. 168[1].  Plaintiffs respectfully request that this Court grant this motion for final approval of attorney's fees, litigation costs, and class representative incentive compensation and issue an Order:

(1)     approving attorney's fees to be paid to Class Counsel, Aiman-Smith & Marcy PC, in the amount of $7,500,000;

(2)     approving litigation costs to be paid to Class Counsel, Aiman-Smith & Marcy PC, in the amount of $250,000; and

(3)     approving class representative incentive compensation in the amount of $10,000, each to the named representatives in the *Brown* action, Alexander Brown and Arik Silva, and $5,000, each to the named representatives in the *Bojorquez* action, Matthew Allan, Brielle Bratton, and Jake Vallante.

This Motion is based on the accompanying Memorandum of Points and Authorities, the Declarations of Class Counsel, the attached exhibits, the time records submitted for *in camera* review, the Declarations of Representative Plaintiffs, and all other records, pleadings and papers on file in this action.

---

[1] Note that the Docket Numbers referenced herein correspond to the Docket in the *Brown* action.

A proposed Order Granting Final Approval of Attorney's Fees and Litigation Costs is submitted for the Court's consideration.

Respectfully submitted:

Dated: August 13, 2018

/s/  Hallie Von Rock
Reed W. L. Marcy (admitted Pro Hac Vice)
Randall Aiman-Smith (admitted Pro Hac Vice)
Hallie Von Rock (admitted Pro Hac Vice)
Aiman-Smith & Marcy, PC
7677 Oakport Street, Suite 1150
Oakland, California 94621
Telephone: 510-817-2711
Facsimile: 510-562-6830
Email: rwlm@asmlawyers.com

*Attorneys for Plaintiffs and the Class*

## I.    INTRODUCTION.

Class Counsel Aiman-Smith & Marcy seek Court approval of their attorney's fees and litigation expenses as well as incentive compensation for the five Representative Plaintiffs concurrent with the Joint Motion for Final Approval of Class and Collective Action Settlement, filed separately.  The $25 million common fund settlement in the matters of *Bojorquez, et al. v. Abercrombie & Fitch Co., et al.*, case number 2:16-cv-00551-MHW-EPD ("*Bojorquez* action"), and *Brown, et al. v. Abercrombie & Fitch Co., et al.*, case number 2:17-cv-01093-MHW-EPD ("*Brown* action") is the product of over five years of uncompensated effort and risk assumed by Class Counsel.  Taking on this difficult representation on a purely contingent basis, Class Counsel expended more than 10,000 hours and advanced over $250,000 in litigation expenses in order to achieve a successful recovery for the employees of Abercrombie & Fitch Co. and Abercrombie & Fitch Stores, Inc. ("Defendants" or "Abercrombie") who felt coerced to purchase clothing from Defendants during their employment.   The dockets of these two actions demonstrate how thoroughly contested the procedural, discovery, certification, damages, and merits issues were. Class Counsel effectively repelled a wide array of defenses, any one of which, if successful, would have left the class members empty-handed.  A full description of the events in the case is set forth in the Joint Motion for Final Approval.  Viewed in the context of the risks and challenges of protracted litigation, the ultimate recovery of a $25 million settlement is a testament to Class Counsel's skill and effort for which they should now be compensated.

The percentage method of calculating attorney's fees is the preferred approach in common fund cases in this Circuit.  *See, Rawlings v. Prudential-Bache Props., Inc.* 9 F.3d 513, 515-516 (6th Cir. 1993).  Here, Class Counsel request 30% of the common fund, or $7,500,000.  This fee is reasonable under the circumstances and well within the 20-50% range typically awarded in this District in common fund cases.  *See, e.g., Brotherton v. Cleveland*, 141 F.Supp.2d 894, 913 (S.D. Ohio 2001) ("range of reasonableness" between 20-50% of common fund).  Given the risk, expense, complexity and duration of further litigation, combined with the very real possibility that the class could recover less or nothing at all, the proposed settlement provides a significant benefit to the Settlement Class.

Class Counsel also seek reimbursement of $250,000 in litigation costs (less than they actually spent), all of which were necessarily incurred in litigating the case. Further, Class Counsel request the Court award incentive compensation to the Representative Plaintiffs of $10,000 in the *Brown* action and $5,000 in the *Bojorquez* action. All of these amounts were agreed to as part of the Settlement Agreement and are not contested. The Notice provided to Class Members specifically set forth the amount of fees, costs, and incentive compensation and there were no objections. Accordingly, Class Counsel respectfully request that the Court grant the requested fees, litigation costs, and incentive compensation.

## II. THE REQUESTED FEE IS REASONABLE UNDER THE CIRCUMSTANCES.

In common fund cases, the Sixth Circuit "require[s] only that awards of attorney's fees be reasonable under the circumstances." *Moulton v. U.S. Corp.,* 581 F.3d 344, 352 (6th Cir. 2009) (internal quotations omitted). Fee awards in employment actions under the FLSA and state laws are intended not only to compensate class counsel who have litigated the actions and undertook the risk of receiving nothing for their efforts, but also to incentivize other attorneys to pursue publicly beneficial lawsuits in the future. *See, e.g., Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), cert. denied, 513 U.S. 875 (1994).

In reviewing a request for an award of attorney's fees, the Court must ensure that class counsel is fairly compensated for the amount of work done and the results achieved. *See, Connectivity Sys. Inc. v. Nat'l City Bank,* No. 2:08-cv-1119, 2011 U.S. Dist. LEXIS 7829, at *28 (S.D. Ohio Jan. 26, 2011), *citing, Rawlings,* 9 F.3d at 516. The core inquiry is whether an award is reasonable under the circumstances. *Rawlings,* 9 F.3d at 517. Absent adequate compensation, counsel will not be willing to undertake the risk of class action litigation. Counsel who create a common fund for the benefit of a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved. *Smillie v. Park Chern. Co.,* 710 F.2d 271, 275 (6th Cir. 1983); *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188 (6th Cir. 1974).

The Court's function is to determine what the lawyer would receive in the market and to compensate counsel at the fair market value. *See, e.g., Louisville Black Police Officers*

*Organization v. City of Louisville,* 700 F.2d 268, 277 (6th Cir. 1983). Where counsel's efforts create a substantial common fund for the benefit of the class, they are, therefore, entitled to payment from the fund based on a percentage of that fund. *See, e.g., Brotherton*, 141 F. Supp.2d at 900; *Basile v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 640 F.Supp. 697 (S.D. Ohio 1986) (*citing, Boeing v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed. 2d 676 (1980). This "allows a Court to prevent ... inequity by assessing attorneys' fees against the entire fund, thus spreading fees proportionally among those benefited by the suit." *Boeing*, 444 U.S. at 478.

Counsel here have created a common fund for the benefit of the class. The fee sought here is 30% of the total settlement amount of $25,000,000. This 30% share is within the range of recovery in the 20-50% range routinely awarded in this Circuit and in this District. *See, e.g., Gonter v. Hunt Valve Co., Inc.,* 510 F.3d 610, 616 (6th Cir. 2007) ("The percentages awarded in common fund cases typically range from 20 to 50 percent of the common fund created."); *Swigart v. Fifth Third Bank,* No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *15 (S.D. Ohio July 11, 2014) (33%); *Feiertag v. DDP Holdings,* LLC, No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *19 (S.D. Ohio Sep. 9, 2016) (30%); *Johnson v. Midwest Logistics Sys.,* No. 2:11-CV-1061, 2013 U.S. Dist. LEXIS 74201, at *16 (S.D. Ohio May 25, 2013) (33%); *Ranney v. Am. Airlines,* No. 1:08cv137, 2016 U.S. Dist. LEXIS 14905, at *5 (S.D. Ohio Feb. 8, 2016) (44%); *Kritzer v. Safelite Sols., LLC,* No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *31 (S.D. Ohio May 30, 2012) (52%); *Moore v. Aerotek, Inc.*, 2017 U.S. Dist. LEXIS 115946 * 2 ($5 million fee in $15 million settlement).

In *Ramey,* the Sixth Circuit set forth six factors courts should consider to determine the reasonableness of a fee award: 1) the value of the benefit to the class; 2) society's stake in rewarding attorneys who produce such benefits as an incentive; 3) whether the services were undertaken on a contingent basis; 4) the value of the services on an hourly basis; and 6) the professional skill of counsel on both sides. *See, Ramey,* 508 F. 3d at 1196; *Connectivity Sys.,* 2011 U.S. Dist. LEXIS 7829, at *32. Here, all six *Ramey* factors support the requested fee.

A crosscheck against the lodestar also supports the requested fee. In this District, "the

preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Connectivity Sys.,* 2011 U.S. Dist. LEXIS 7829 at *13. Multipliers of 2-5 times the lodestar have routinely been approved in this District in common fund cases. *See, e.g., Johnson,* 2013 U.S. Dist. LEXIS 74201, at *6 (S.D. Ohio May 24, 2013) (2.25 multiplier); *Swigart*, 2014 U.S. Dist. LEXIS 94450, 2014 WL 3447947, at *6 (2.57 multiplier in FLSA case); *Lowther v. AK Steel Corp.,* 2012 U.S. Dist. LEXIS 181476, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (3.06 multiplier); *Castillo v. Morales, Inc.,* No. 2:12-CV-650, 2015 U.S. Dist. LEXIS 192936, at *22 (S.D. Ohio Dec. 22, 2015) (2.5 multiplier in FLSA case); *Moore v. Aerotek, Inc.,* No. 2:15-cv-2701, 2017 U.S. Dist. LEXIS 102621, at *22-23 (S.D. Ohio June 30, 2017) (4.6 multiplier); *Merkner v. AK Steel Corp.* 1:09-cv-00423 (TSB) (S.D. Ohio Jan. 10, 2011) (5.3 multiplier); *In re Cardinal Health,* 528 F.Supp.2d. 752, 767 (S.D. Ohio 2007) (5.9 multiplier for $108 million fee).

By either the percentage or lodestar measure, Class Counsel's requested fee here is reasonable. Class Counsel certified a class of over 62,000 in California and brought a nationwide, hybrid state law/FLSA claim on behalf of another 200,000 Abercrombie employees. Class counsel obtained a total settlement of $25 million, with 31,649 class members filing claims. The fee was disclosed to all class members in the notice, with no objections. The 30% fee falls well within the 20-50% range commonly accepted in this District and in the Sixth Circuit. In addition, the requested fee is reasonable in light of each of the *Ramey* factors.

Class counsel expended over 10,000 hours over the course of more than five years in these cases, yielding a lodestar of over $5.6 million using national market rates. The multiplier would therefore be 1.33. This falls at the low end of the range typically approved in this District as a cross-check against a percentage fee. Accordingly, the fee sought here is reasonable.

## III. THE REQUESTED FEE IS REASONABLE AS A PERCENTAGE OF THE TOTAL SETTLEMENT.

### A. Legal Standard for Provision of Attorney's Fees by the Percentage Method.

In considering the benefit provided to both Class and Collective members in this common fund settlement, the preferred method for calculating attorney's fees is the percentage-of-the-fund

method.  The percentage-of-the-fund method for calculating attorney's fees has been held by the Sixth Circuit, and this District, as the preferred approach in common fund cases.  *See, Connectivity Sys. Inc*., 2011 U.S. Dist. LEXIS 7829, at *34; *Rawlings v. Prudential-Bache Props, Inc.*, 9 F.3d 513, 515-516 (6th Cir. 1993); *In re Telectronics Pacing Sys., Inc.,* 186 F.R.D. 459, 483 (S.D. Ohio 1999), rev'd on other grounds, 221 F.3d 870 (6th Cir. 2000); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 910 (S.D. Ohio 2001); *In re Broadwing, Inc. ERISA Litig*., 252 F.R.D. 369, 381 (S.D. Ohio 2006).  The percentage of the fund method "most closely approximates how lawyers are paid in the private market and incentivizes lawyers to maximize class recovery, but in an efficient manner." *Connectivity Sys. Inc*., 2011 U.S. Dist. LEXIS 7829, at *34.  When applying this method here, and considering the factors set forth below, Class Counsel's requested attorneys' fees award is reasonable.

Under the FLSA, Plaintiffs would be entitled to their attorney's fees.  The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."  29 U.S.C. § 216(b).  The Sixth Circuit has held that the FLSA's mandatory attorney's fees provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourages[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134, *quoting*, *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984).

Similarly, the wage and hour state law claims brought on behalf of Class members in California, New York, Florida, and Massachusetts have attorney's fees provisions analogous with those under the FLSA.  The *Brown* action was litigated entirely in California, where an award of attorney's fees using the common-fund percentage method is also considered appropriate.  The California Supreme Court has stated, "The common fund doctrine originated in the class action context.  Under the doctrine, when a number of persons are entitled in common to a specific fund, an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation of

preservation of that fund, such plaintiff or plaintiffs may be awarded attorney's fees out of the fund." *21st Century Ins. Co. v. Superior Court,* 47 Cal.4th 511, 520 (2009).

Those circuits serving New York, Florida, and Massachusetts also trend toward the percentage of the benefit method. *See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.* (2d Cir. 2005) 396 F.3d 96, 121 (upholding percentage award in E.D. NY, where percentage was 9.8 times lodestar). The Eleventh Circuit requires exclusive use of the percentage-of-the-fund method. *See, e.g., Camden I Condominium Ass'n v. Dunkle* (11th Cir. 1991) 946 F.2d 768 (remanding a Southern District of Florida attorney's fees motion to the trial court for a percentage-of-the-fund analysis). The First Circuit also endorses a percentage-of-the-fund approach: "[B]ecause the POF technique is result-oriented rather than process-oriented, it better approximates the workings of the marketplace. We think that Judge Posner captured the essence of this point when he wrote that 'the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character.'" *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.* (1st Cir. 1995) 56 F.3d 295, 307. The Supreme Court has also consistently approved the percentage-of-the-fund method and specifically has held that the percentage should be on the entire common fund created, rather than on the funds claimed: "The[] right [of absent class members] to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." *Boeing,* 444 U.S. at 480.

B.     The Requested Fee Is Reasonable Under Each of the *Ramey* Factors.

In reviewing the reasonableness of a percentage fee award, this Court considers six factors: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d at 1196; *see also, e.g., Ranney*, 2016 U.S. Dist. LEXIS 14905, at *6 (S.D. Ohio Feb. 8, 2016); *Swigart,* 2014 U.S. Dist. LEXIS 94450, at *14 (S.D.

Ohio July 11, 2014); *Connectivity Sys.*, 2011 U.S. Dist. LEXIS 7829, at *36 (S.D. Ohio Jan. 25, 2011). Here, all six *Ramey* factors weigh in favor of the requested fee.

Class Counsel took considerable risk in litigating these complex cases, expended over 10,000 hours in litigation, and achieved a remarkable result for the class members. Counsel in *Brown* and *Bojorquez* obtained and analyzed more than 66,000 pages of documents. (*See,* Declaration of Randall B. Aiman-Smith in Support of Motion for Preliminary Approval ("Aiman-Smith Decl."), ¶11. *Brown* Dkt. 168). They took 39 depositions in the *Brown* action and litigated the matter through class certification and into merits discovery. In *Bojorquez*, Plaintiffs prepared a FLSA motion for conditional certification. (*Id*. ¶12.) Mediation sharpened the parties' understanding of the case. Class counsel, in conjunction with Plaintiffs' expert, analyzed hundreds of thousands of rows of purchase data and payroll records for Class and Collective members to calculate a detailed damages analysis for mediation (*Id*. ¶13). The parties marshalled that data and drafted and exchanged over 196 pages of single-spaced mediation briefs (not including exhibits) and engaged in two full-day mediation sessions, as well as subsequent conference calls and meetings, where their theories and exposure analyses were tested, revised, and refined. In sum, the parties developed a thorough understanding of the merits of their claims and defenses, allowing both sides to appreciate and consider the risks of further litigation and accurately value the case. (Aiman-Smith Decl. ¶16.)

Through discovery, motion practice, and arms' length negotiating sessions aided by an experienced mediator, Class Counsel have achieved a common fund settlement totaling $25 million in the face of significant risks going forward. "Counsel who create a common fund for the benefit of a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved." *Connectivity Sys*., 2011 U.S. Dist. LEXIS 7829, at *31, *citing, Smillie*, 710 F.2d at 275. As set forth in the Joint Motion for Final Approval, the substantial benefits provided for the Class and Collective members balanced against the uncertainties of trial weighs in favor of settlement approval. Moreover, "[b]ecause … the parties have negotiated a reasonable attorneys' fee, the class will not be deprived of any benefit … [T]he Settlement Agreement does not accord

preferential treatment to Class Counsel at the expense of the class nor does it offer only perfunctory relief to unnamed class members." *Gascho v. Global Fitness Holdings, LLC* (S.D. Ohio Apr. 4, 2014, No. 2:11-cv-436) 2014 U.S. Dist. LEXIS 46846 at *76.

The settlement fund made more than $16 million net available to the Class and Collective Members who submitted claims. All Class and Collective Members who believed they were coerced or compelled to purchase clothing from Defendants during their employment had an opportunity to receive compensation from the settlement. As a result, 31,649 Class and Collective Members who submitted timely claims will receive payment. In light of these benefits to the class, we can turn to an examination of each of the factors set forth in *Ramey*.

i.     *The Value of the Benefit Rendered to the Class.*

The settlement accomplished everything it set out to do: all Class and Collective Members who felt they were compelled or coerced to purchase Abercrombie clothing had the ability to make a claim and be compensated, net of fees and costs. Every timely claim will be paid. Given the strength of Plaintiffs' case, Abercrombie's defenses, and the risk, expense, and duration of further litigation, the settlement is an excellent result for the Class.

ii.     *Society's Stake in Rewarding Attorneys Who Produce Such Benefits in Order to Maintain an Incentive to Others.*

Here, many of Plaintiffs' claims involved fee shifting statutes for wage and hour claims, the purpose of which is to induce experienced attorneys to undertake representation in litigation that may not otherwise be economically viable. *See, Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 552 (2010). "[A]ttorneys who take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process and should be rewarded for their effects." *Volz v. Coca Cola Co.* (S.D. Ohio Mar. 31, 2015, No. 1:10cv879) 2015 U.S. Dist. LEXIS 41938 at *4, *citing, In re Skechers Toning Shoe Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 67441 at *42 (W.D. Ky. 2013). Given the purpose of fee shifting statutes and "the goal of class actions - i.e., to provide a vehicle for collective action to pursue redress for tortious conduct that it is not feasible for an individual litigant to pursue," there is a substantial public interest in compensating Class

Counsel for the amount of work done in a class action.  *See, Lonardo v. Travelers Indem. Co*., 706 F.Supp.2d 766, 795 (N.D. Ohio 2010); *see also, Connectivity Sys*., 2011 U.S. Dist. LEXIS 7829 at *36-37 ("There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and other like them will continue to take on such cases.").

Without the actions filed in *Brown* and *Bojorquez*, most, if not all, of the Class and Collective Members would have had to pursue their own claims and would not have been able to find counsel willing to take such small value cases on an individual basis, or more likely, they would not have known they had claims at all.  *See, Kritzer v. Safelite Solutions*, LLC (S.D. Ohio May 30, 2012, No. 2:10-cv-0729) 2012 U.S. Dist. LEXIS 7499 at *27-29 ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own.")  The Court further held that the maximum attorney's fees request was warranted, even though "the recovery would equal nearly 52 percent of the total recovery from Defendants" due to the low claims made participation. *Id.*  Here, as in *Kritzer*, "the attorney-fee award proposed in this case, though substantial, must be viewed in conjunction with the substantial award garnered in favor of the class." *Id*. at *29.  Following direct mail notice and a Net Settlement Fund made available of $16,677,500, there are 31,649 Class Members who will receive compensation.  Thus, this second factor weighs in favor of the requested fees.

<blockquote><em>iii.     Whether the Services Were Undertaken on a Contingent Fee Basis.</em></blockquote>

Class Counsel undertook considerable risk in litigating this case on a contingency basis. Class counsel invested over 10,000 hours over more than five years without any compensation to date.  Given the work demanded in these cases, including scheduling of multiple depositions in a day – sometimes occurring in different states – there were times when at all attorneys in the firm were working exclusively on these cases.  *See,* Declaration of Hallie Von Rock in Support of Motion for Approval of Attorney's Fees ("Von Rock Dec.") ¶¶ 6-12.  Class Counsel had to hire additional, part-time attorneys dedicated to these cases for interviewing witnesses, preparing declarations, and working with senior attorneys in the firm to gather essential evidence for class

certification. *Id*. Due to the large volume of work necessary in these cases, Class Counsel also had to turn down other cases because additional workload could not be taken on at the firm. *Id.*

Moreover, Defendants raised numerous arguments that could potentially undo certification in *Brown* and defeat it in *Bojorquez*, and/or could potentially defeat liability, or at least significantly reduce damages. The risk of continued litigation and "the fact that, despite the most vigorous and competent efforts, success is never guaranteed," further supports the attorney's fees requested here. *Ramey*, 508 F.2d at 1197.

*iv.     The Value of the Services on an Hourly Basis.*

Class Counsel spent over 10,000 hours on this case with a lodestar value of $5,619,746. "To compensate for the delay Plaintiffs' Counsel encountered in receiving compensation, it is appropriate to use current fee rates in calculating the lodestar." *See, Connectivity Sys. Inc*., 2011 U.S. Dist. LEXIS 7829 at *35, *citing, Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *Basile*, 640 F.Supp. at 703 fn.7. The declarations of Class Counsel submitted in support of this Motion establish the reasonableness of their rates and are consistent with their training, background, experience, and skill. In addition, Class Counsel have provided extensive documentary evidence of national market rates for attorneys of similar experience from the National Law Journal, the *Laffey* matrix, and other sources. *See,* Von Rock Dec. at ¶¶ 21-28.

*v.     The Complexity of the Litigation.*

These were complex cases, involving the law of four states and the FLSA. Defendants contend that Abercrombie's policies expressly state that employees are not required to purchase company clothing and Plaintiffs' evidence of an unwritten policy of coercion to purchase clothing was not consistent and led to individual issues. Despite these contentions, Class Counsel combed through thousands of documents to locate critical evidence necessary for supporting their motion for class certification in *Brown.* The certification motion was complex and hard fought, resulting in a 68-page Order from the district court. Additionally, Plaintiffs had prepared their FLSA motion and undertook the complex task of attempting to certify three separate state classes and an FLSA collective action in *Bojorquez*, and maintaining class certification status in *Brown. See,* Von Rock

Dec. ¶¶ 16-17.  While the cases were settled prior to these motions being filed, the work put into both actions was essential for settlement.

vi.     *The Professional Skill and Standing of Counsel on Both Sides.*

The parties aggressively litigated the *Brown* case for over four years, including through class certification and engaged in extensive discovery and motion practice; and the parties litigated the *Bojorquez* action for two years, including contested motions and exchanging large amounts of data regarding the claims asserted.

Attorneys at Aiman-Smith & Marcy have represented employees in numerous employment class actions, including published decisions.  *See,* Von Rock Dec. ¶ 13, Ex. A.  Class Counsel are well qualified to conduct the litigation and to assess its settlement value.  Defendants were represented by two respected law firms, Greenberg Traurig and Vorys Sater Symour & Pease, both of which have extensive employment practices and assigned top attorneys that vigorously defended Abercrombie in these cases.

The quality of the services of counsel on both sides is further evidenced by the settlement only being reached after arm's-length negotiations during two full-day mediation sessions with well-known mediator Hunter Hughes III, another full-day in-person meeting between counsel in Los Angeles, and three months of telephone and written negotiations.  The skilled representation by Class Counsel and Defendants' Counsel is demonstrated by the benefit achieved for the Class and Collective Members and the efficient prosecution and resolution of these cases.

Thus, all six factors identified in *Ramey* support Plaintiffs' request for a reasonable percentage-of-the-fund attorney's fees award in these cases.

## IV.    A LODESTAR CROSSCHECK SUPPORTS AN AWARD OF THIRTY PERCENT OF THE COMMON FUND.

While the preferred method for an award of fees in this District is the percentage method, Courts also use the lodestar and multiplier method as a crosscheck of the reasonableness of the fee.  *See, e.g., Connectivity Sys*., 2011 U.S. Dist. LEXIS 7829 at *13; *Feiertag*, 2016 U.S. Dist. LEXIS 122297 at *20-21 (lodestar crosscheck is optional but weighs heavily in favor of granting

request); *Johnson*, 2013 U.S. Dist. LEXIS 74201 at *6; *Swigart*, 2014 U.S. Dist. LEXIS 94450, at *6. The requested fee here is reasonable using the lodestar method as well.

A.     Class Counsel's Hours Spent on the Case Are Reasonable.

Class Counsel have spent more than 10,000 hours litigating these cases over five years. *See,* Von Rock Dec. ¶¶ 29-30. Class Counsel have submitted detailed daily time records for each attorney for the Court's *in camera* review. *Id.* (time records submitted pursuant to motion for *in camera* review). As the time records show, Class Counsel recorded only time that was essential to the litigation and to the settlement process. The time spent on the case reflects the complexity and difficulty of the litigation and the dedication of Class Counsel in litigating the case on a contingent basis for more than five years.

In reviewing an award under the lodestar approach, the party seeking attorney's fees is responsible for submitting "sufficiently detailed" documentation of the hours worked and the rates claimed. *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 52 (6th Cir. 2008). Hours expended need not be recorded in explicit detail, yet the general subject matter should be identified. *See, McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005). It is the obligation of the prevailing party to exercise "billing judgment" and make a good faith effort to exclude any hours that are excessive or unnecessary. *See, Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Here, as detailed in Class Counsel's declarations, contemporaneous time records were kept, and billing judgment was used to eliminate duplicative or excessive entries. *See,* Von Rock Dec. ¶ 18. This litigation began as a California-only class, which was certified over vigorous opposition in the Central District of California as a class of more than 62,000 Abercrombie employees in California. The litigation was then expanded to include a nationwide hybrid state law and FLSA class of another roughly 200,000 employees, which ultimately resulted in the nationwide settlement set forth in the Joint Motion for Final Approval. The complexities and challenges of certifying a class, of bringing nationwide claims, and of bringing additional state law claims all support the amount of time spent on the case by Class Counsel. Considering the complexity of the state law and FLSA claims and the expansive scope, duration and intensity of the litigation, the

time Class Counsel has devoted to this case was necessary and reasonable.

      B.     Class Counsel's Hourly Rates Are Reasonable.

Aiman-Smith & Marcy is an experienced employment law class action firm in Oakland, California, that has been lead counsel on numerous complex, class action cases. *See,* Von Rock Dec., Ex. A. The hourly rates for each attorney are described in their declarations, submitted herewith. These rates are commensurate with national rates for attorneys of similar experience and qualifications. In this case, which was certified in California and litigated thereafter as a nationwide state law/FLSA hybrid action, use of nationwide market rates is particularly appropriate. *See, e.g., McHugh v. Olympia Entm't, Inc.* 37 Fed.Appx. 730, 740 (6th Cir. 2002), *citing, Lousiville Black Police Officers Ass'n,* 700 F.2d at 278 (court may "look to national markets, an area of specialization, or any other market appropriate to fairly compensate attorneys in individual cases" when assessing whether Class Counsel's hourly rates are reasonable).

Here, the relevant market for Class Counsel's hourly rate is California, where these cases were initially venued. A court may "award a higher hourly rate for an out-of-town specialist if (1) hiring the out-of-town specialist was reasonable in the first instance, and (2) if the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Brian A. v. Hattaway*, No. 02-5666, 83 F. App'x 692, at *694 (6th Cir. Nov. 21, 2003) (*citing, Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995)). Both of these factors are met here. Alternatively, the Court may consider national market rates. As this Court has previously held, it "will look to the prevailing national market rates for attorneys involved in complex class action … litigation with the amount of experience similar to that of Plaintiffs' counsel." *Amos v. PPG Indus.* (S.D. Ohio Aug. 13, 2015, No. 2:05-cv-70) 2015 U.S. Dist. LEXIS 106944 at *27. Class Counsel's hourly rates are reasonable in comparison to both California and national market rates for attorneys of similar experience.

      *i.*     *Hiring California Class Counsel Was Reasonable.*

The *Brown* and *Bojorquez* actions were commenced and primarily litigated in California. Plaintiffs in *Brown* both reside in California. Plaintiffs in *Bojorquez* reside in Massachusetts,

Florida, and New York (dismissed plaintiffs Alma Bojorquez and C'endan Claiborne lived in California). Thus, it was reasonable that California attorneys litigated these actions and Class Counsel should be compensated with their standard hourly rates.

The *Brown* action was filed in the Superior Court of Alameda County, California, in September 2013. Defendants removed the *Brown* action to federal court and it was transferred to the Central District of California. The entirety of the *Brown* litigation, prior to settlement, occurred in California, including multiple contested motions, class certification, and over 30 depositions. The *Bojorquez* action was filed in the Central District of California, in December 2015. Defendants made a motion to dismiss the claims of the California Plaintiffs and to transfer the action to the Southern District of Ohio. The Court granted Defendants' motion and the *Bojorquez* matter was transferred to this Court, in June 2016. The parties engaged in extensive discovery in *Bojorquez* following the transfer, but the action was then stayed pursuant to stipulation in April 2017, so that the parties could focus their efforts on mediation. During the stay, the parties continued informal discovery in *Bojorquez* in preparation for two separate mediations. The mediations occurred in Atlanta, Georgia, at of the office of the mediator. Moreover, additional settlement negotiations between the parties primarily took place in California, including at the offices of defense counsel in Los Angeles. No motion practice took place in Ohio prior to settlement. *See,* Von Rock Dec. ¶ 5.

Additionally, the *Bojorquez* action was national in scope, with FLSA claims in 49 states and specific state law claims for Florida, Massachusetts, and New York. The vast scope of the Class and Collective membership in *Bojorquez* was the basis for transferring the *Brown* action to this Court, so that all claims relating to the global settlement could be heard in one forum. *Id.* ¶ 9. *See, e.g., Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.,* 264 F.Supp. 2d 753, 764 (S.D. Ind. 2003) ("distinctly 'national' litigation … may justify the use of essentially 'national' rates because the location of the forum court is fortuitous"). Accordingly, given the origin of these cases, the use of California Class Counsel was reasonable.

*ii.* *Class Counsel's Hourly Rates Are Reasonable.*

Class Counsel has extensive experience in complex, class action litigation and their billing rates are "consistent with the rates for similar services by lawyers of reasonably comparable skill, experience and national reputation." *Blum v. Stenson*, 465 U.S. 886, 896 fn. 11. (1984). The hourly rates for attorneys at Aiman-Smith & Marcy have been approved by numerous courts, most recently in *Guess Outlet Stores Pricing Cases*, Judicial Counsel Coordination Proceeding No. 4883 (Los Angeles Superior Court, Aug. 7, 2018). *See,* Von Rock Dec. ¶ 21.

Class Counsel's firm regularly does extensive research into hourly rates charged in the California market and nationally by attorneys with comparable experience. *See,* Von Rock Dec. ¶ 22. This includes 1) research into hourly rates in comparable class action litigation in California; 2) rates set forth in the National Law Journal's annual survey of billing rates; and 3) rates set forth in the widely-used *Laffey* matrix. *Id.*

Class Counsel conduct regular research into hourly rates awarded by state and federal courts in California. These have been compiled in a survey of over 200 lawyers' hourly rates, as reflected in sworn attorney declarations filed in various Bay Area and Los Angeles Area Superior Courts as well as all the District Courts in California. *See,* Von Rock Dec. ¶ 23. This survey includes cases in areas of complex litigation similar to those in which Class Counsel's firm practices. *Id.* In each instance, the firm tracked the hourly rate actually awarded by the court, the years of experience of each attorney at the time of the award, and other information. *Id.* Using this data, Class Counsel was able to calculate average and median hourly rates awarded by courts in California for cohorts of attorneys with similar experience to their own. *Id.* For the Court's reference, a copy of this survey is attached to the Von Rock Dec., Ex. B.

For attorneys with more than 30 years of experience (similar to Randall Aiman-Smith), the hourly rates awarded ranged from $700 to $1,250, averaging $841. Mr. Aiman-Smith's rate is $850. For attorneys with 20-25 years of experience (similar to Reed Marcy), the hourly rates awarded ranged from $450 to $950, averaging $670. Mr. Marcy's rate is $750. For attorneys with 10-19 years of experience (similar to Hallie Von Rock), the hourly rates awarded ranged from $400 to $935, averaging was $636. Ms Von Rock's rate is $650. For attorneys with 5 to 9 years

of experience, the hourly rates awarded ranged from $300 to $615, averaging $452.  Mr. James, with 8 years of experience and an LLM, has a rate of $550.  Mr. Robinson, (5 years) and Mr. Clark (10 years) have rates of $400 per hour.  For attorneys with 2 to 4 years of experience, the hourly rates awarded range from $245-$460, averaging $348.  The staff attorneys who worked on these cases have rates of $250.  For paralegals, the hourly rates awarded ranged from $170 to $300, averaging $238.  Class Counsel's litigation support staff, who have decades of experience, have an hourly rate of $175.  *See,* Von Rock Dec. ¶ 24.

Class Counsel also regularly purchases and analyzes the National Law Journal Annual Survey of Billing Rates.  *Id.* ¶ 25.  The NLJ conducts an annual survey of billing rates for the nation's largest law firms (the NLJ 500) and others to provide a range of hourly billing rates for partners and associates.  Firms which wish to participate provide data regarding partner and associate rates, including high, low, average, and median billing rates.  The data includes total number of attorneys at the firm, and the city of the firm's main office or largest office.  The 2017 NLJ survey included information from more than 900 law firms nationwide, and 78 firms from the NLJ 500.  For the Court's reference, a copy of the survey for the firms with an NLJ 500 Rank is attached to the Von Rock Dec., Ex. C.

Reviewing the submissions of all the firms on the NLJ 500, the average senior partner billing rate was $878.  The highest rate was $1,435.  There were 16 firms with billing rates above $1,000.  The average rate for senior associates was $590.  The highest senior associate rate was $1,080.  Eight firms had senior associate billing rates over $800.  The average for junior associates was $381.  The highest junior associate rate was $820.  Eight had junior associate billing rates over $500.  Six of the firms were defense firms Class Counsel has faced in class action litigation in recent years.  *See,* Von Rock Decl. ¶ 26.  For those six, the senior partner rates ranged from $760 to $1,235, with an average of $1,048.  The senior associate rates range from $475 to $875, with an average of $697.  The junior associates ranged from $265 to $585, with an average of $395.  *Id.* Class Counsel's rates are well within these ranges.

In addition, Courts in this Circuit also frequently look to the *Laffey* Matrix for evidence of

national rates. *See, e.g., Adcock-Ladd v. Sec'y of Treasury* 227 F.3d 343, 347 fn. 3 (6th Cir. 2000). The *Laffey* Matrix is a statement of market-supported research of reasonable hourly rates adopted and annually updated by the D.C. Circuit, which can be found at http://www.laffeymatrix.com. According to the *Laffey* Matrix, attorneys with 20 or more years of experience average $894/hour, attorneys with 11-19 years of experience average $742/hour, attorneys with 8-10 years of experience average $658/hour, and attorneys with 4-7 years of experience average $455/hour. *See,* Von Rock Dec. ¶ 27, Ex. D.

In comparison to the internal survey, the NLJ survey, and the *Laffey* Matrix, each of the hourly rates for the lawyers in Aiman-Smith & Marcy is well below the top end of the range and is close to the average for each cohort. The requested rates are therefore reasonable.

In comparing the hourly rates to that of Defendants' counsel, the 2017 NLJ survey provides billing rates for Greenberg Traurig, including the partner billing high rate of $1,080 and an average of $790; and the associate average rate of $475. The 2016 NLJ survey provides billing rates for Greenberg Traurig, including the partner billing high rate of $1,080 and an average of $950; and the associate high rate of $710 and an average of $563. *See,* Von Rock Dec. ¶ 28, Ex. E.

Furthermore, Class Counsel's hourly rates are comparable to those awarded by this Court in other cases. For example, in *Gilbert v. Abercrombie & Fitch, Co.* (S.D. Ohio Aug. 5, 2016, No. 2:15-cv-2854) 2016 U.S. Dist. LEXIS 103441 (report and recommendation approving hourly rates up to $850), adopted and affirmed in *Gilbert v. Abercrombie & Fitch, Co.* (S.D. Ohio Aug. 24, 2016, No. 2:15-cv-2854) 2016 U.S. Dist. LEXIS 113046 (awarding hourly rates ranging from $850 for senior attorneys to $425 for associates). The Court held that "[t]he hourly rates charged by Kessler Topaz are consistent with the rates for similar services by lawyers of reasonably comparable skill, experience, and national reputation." *Gilbert*, 2016 U.S. Dist. LEXIS 103441 at *47. Abercrombie's attorneys in the *Gilbert* matter were from the law firm Vorys Sater Seymour & Pease, who represented Abercrombie in these cases.

In light of the hourly rates for attorneys of similar experience in California and nationally, the rates of opposing counsel, and rates previously approved by this Court, the rates sought here

are reasonable.

   C.     A Multiplier of 1.33 to Class Counsel's Lodestar Is Reasonable.

   The fee sought here by Class Counsel of $7,500,000 represents approximately 1.33 times the total lodestar and, therefore, is well within the range of multipliers typically awarded in class action common fund cases. *See, e.g., Lonardo,* 706 F.Supp.2d at 794 ("Multipliers are not uncommon in class action settlement cases to enhance the lodestar figure in recognition of the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved." (internal citations omitted)). Multipliers to the lodestar of between approximately 2.0 and 5.0 are commonly awarded in this District. *See, Connectivity Sys.,* 2011 U.S. Dist. LEXIS 7829 at *35-36; *see also, Merkner v. AK Steel Corp.*, 1:09-cv-00423-TSB, ECF No. 79 (S.D. Ohio Jan. 10, 2011) (multiplier of 5.3 in lodestar crosscheck); *In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp. 2d 752, 767 (S.D. Ohio 2007) (multiplier of 5.9 in lodestar crosscheck); and *In re Fernald Litig.*, No. C-1-85-149, U.S. Dist. LEXIS 17764 at *5 (S.D. Ohio Sept. 29, 1989) (multiplier of 5 in lodestar crosscheck).

   Thus, as a cross-check, the lodestar and modest 1.33 multiplier supports the reasonableness of an attorney's fees award of 30% of the common fund.

## V.     CLASS COUNSEL'S LITIGATION COSTS ARE REASONABLE.

   Per the terms of the Settlement Agreement, Class Counsel seek litigation costs in the amount of $250,000. This is less than the actual costs of $250,737. *See,* Von Rock Dec. ¶ 31, Ex. F (Costs Detail). "Under the common fund doctrine, Plaintiffs' Counsel are entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Rikos v. P&G* (S.D. Ohio Apr. 30, 2018, No. 1:11-cv-226) 2018 U.S. Dist. LEXIS 72722 at *27. Class counsel is entitled to "expenses [that] were reasonable and necessary in connection with litigating and resolving this case and are therefore reimbursable." *Kimber Baldwin Designs, LLC v. Silv Communs., Inc.* (S.D. Ohio Nov. 13, 2017, No. 1:16-cv-448) 2017 U.S. Dist. LEXIS 186830 at *18; *see also, Bower v. MetLife, Inc.* (S.D. Ohio Oct. 17, 2012, No. 1:09-cv-351) 2012 U.S. Dist. LEXIS 149117, at *24-25.

Here, as detailed in the Index of Litigation Costs, Class Counsel took on a substantial financial burden in out-of-pocket expenses litigating these cases.  The bulk of the litigation costs are associated with taking and defending 39 depositions throughout California and in other states, expert fees, printing costs for the thousands of documents produced by Defendants electronically, and mediation expenses.  All of the expenses paid by Class Counsel were necessary for the successful litigation and resolution of these cases.  Accordingly, the Court should reimburse $250,000 from the common fund to Class Counsel for their litigation costs.

## VI.    THE COURT SHOULD AWARD INCENTIVE COMPENSATION.

Class Counsel request the Court order incentive awards of $10,000, each to Representative Plaintiffs Alexander Brown and Arik Silva in the *Brown* action and $5,000, each to the Representative Plaintiffs Matthew Allan, Brielle Bratton, and Jake Vallante in the *Bojorquez* action. The *Brown* action was filed over two years before *Bojorquez* and, thus, the Representative Plaintiffs in that action spent substantially more time on the case, which justifies the higher incentive award.  Defendants do not oppose these amounts.  These amounts were disclosed in the Notice and no one objected.

It is typical for courts to grant incentive awards to Representative Plaintiffs who have been able to gain significant relief for a class.  *See, Thornton v. East Texas Motor Freight*, 497 F. 2d 416, 420 (6th Cir. 1974) ("[T]here is something to be said for rewarding those [plaintiffs] who protest and help to bring rights to [others]"); *In re Cardizem CD Antitrust Litig.* (E.D. Mich. 2003) 218 F.R.D. 508, 535 (service awards "are common in class actions").

Here, all factors strongly mitigate in favor of the requested incentive payment.  The Representative Plaintiffs forewent bringing individual claims in favor of litigating the claims over 215,000 individuals.  Further, the notoriety of being a class action representative plaintiff is even more significant today given the accessibility of court documents on-line and class action blogs.  Thus, the incentive award is necessary to award Representative Plaintiffs for the notoriety and risk taken in their roles as class representatives.

Finally, the requested incentive awards are reasonable to compensate the Representative

Plaintiffs for the substantial time and effort invested to bring these actions to a favorable settlement on behalf of the Settlement Class and Collective members. They provided critical information to Class Counsel and meaningful assistance in investigating, filing, litigating, and ultimately settling the action. *See,* Von Rock Dec. ¶¶ 33-39; *see also*, Declarations of Representative Plaintiffs filed in Support of Final Approval. Accordingly, given the substantial benefit provided to the class through the efforts of the Representative Plaintiffs, the requested incentive awards totaling $35,000, for all five Representative Plaintiffs, are reasonable and supported by applicable case law. *See, Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991) (approving service payments of $50,000 to each of the six class representatives); *In re Dun & Bradstreet Credit Serv. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (approving services payments between $35,000 and $55,000 to five class representatives); *Basile,* 640 F.Supp. at 702 (court awarded $948,000 in service payments for representative plaintiffs and intervening plaintiffs from a $12.6 million settlement fund).

## VII.   CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court approve (a) the award of attorneys' fees in the amount of $7,500,000, (b) litigation costs in the amount of $250,000, and (c) incentive compensation of $35,000 to the Representative Plaintiffs.

Dated: August 13, 2018

Respectfully submitted:

/s/  Hallie Von Rock
Hallie Von Rock
Aiman-Smith & Marcy, PC
7677 Oakport Street, Suite 1150
Oakland, California 94621
Telephone: 510-817-2711
Facsimile: 510-562-6830
Email: hvr@asmlawyers.com

*Attorneys for Plaintiffs and the Class*